## In Re Anna S. Bradley's Will.

May Term, 1901.

Present: TAFT, C. J., TYLER, MUNSON, WATSON and STAFFORD, JJ.

Opinion filed June 22, 1901.

*Construction of wills—Intention of testatrix as drawn from the whole will—Legacy not specific and doctrine of ademption inapplicable—* One clause of a widow's will was: "I will and bequeath to Eva Mabel Davis, Grace Leona Tuck and Laura Lillian Tuck, nieces of my late husband, Capt. Charles O. Bradley, and children of his sister, Eliza Tuck, and Frank Davis, all the money on hand and all the bonds that were left to me by my said husband at the time of his decease." In accordance with the intention of the testatrix, as drawn from the whole will, this clause was effectual as a bequest of the avails of life insurance "left" by her husband for her benefit and invested in bonds at the time of the execution of the will. While the will was ambulatory one of such bonds was sold, and a deposit of the proceeds of the sale was made, which ever thereafter

was kept intact by the testatrix. The bequest was not specific, but general or demonstrative, and the doctrine of the ademption of specific legacies was inapplicable.

· APPEAL from a decree of the Probate Court construing the will of Anna S. Bradley and ordering distribution thereunder.    Trial by court, Windsor County, December Term, 1900, *Start, J.,* presiding.    Judgment was rendered *pro forma* affirming the decree of the Probate Court.    The appellants excepted.

*William Batchelder* and *Henry F. Hollis* for the appellants.
*H. G. Sargent* and *W. E. Johnson* for the appellees.

TYLER, J.    The testatrix, Anna S. Bradley, was the widow of Capt. Charles O. Bradley of the U. S. army.    He died in Montana May 14, 1887.    Mrs. Bradley died January 23, 1899, leaving the will in controversy which she made in December, 1891.    The second clause is as follows:

"I will and bequeath to Eva Mabel Davis, Grace Leona Tuck and Laura Lillian Tuck, nieces of my late husband, Charles O. Bradley, and children of his sister, Eliza Tuck, and Frank Davis, all money on hand and all the bonds that were left to me by my said husband at the time of his decease."

There were a few small bequests, about which there is no controversy, and the residue of the estate was given to the testatrix's lawful heirs who are the appellants.    The legatees named in the second clause are the appellees.    The will was duly probated and an administrator was appointed who settled his account, and the Probate Court in its decree of distribution ordered that the deposit of $1,302 in the White River Savings Bank in the name of the testatrix, and the Olmstead bond, then valued at $2,500, be paid to the appellees, from which order the nephews of the testatrix, who are her heirs-at-law, appealed to the County Court where the case was tried

mainly upon evidence admitted upon *pro forma* rulings. It appeared without controversy that the testatrix left property, other than the two items decreed to the appellees, amounting to $5,355.51; also that her husband's life was insured for her benefit, and that after his death she received $5,000 on one policy, which was invested in the Olmstead bond, and $1,300 on another policy, which was invested in the Bates bond. She owned these bonds when she made her will, but the Bates bond was paid February, 1897, and she deposited the amount received for it to her credit in the savings bank, and it was one of the items decreed to the appellees who claim that the Olmstead bond, and the savings bank deposit as proceeds of the Bates bond, are the property bequeathed to them in the second clause of the will.

I. The appellants contend that the two items named in the decree do not answer the description of the money and bonds bequeathed to the appellees; that the two bonds and the funds with which they were purchased were never the property of Capt. Bradley; that as the insurance policies were made payable to his wife upon his death the clause in question could not be construed to include the proceeds of the policies; that it was incompetent to show by parol evidence of her declarations made at the time the will was executed that these were the bonds that she intended should pass under that clause, and that it was incumbent upon the appellees to show by other evidence than the testatrix's declarations that her husband did not in fact have bonds of his own upon which this bequest could operate.

The appellees contend that there are facts in the case sufficient to establish their claim without proof of the testatrix's declarations. It did appear that Capt. Bradley left a will bequeathing to his wife whatever property he had; that the will was proved and an administrator was appointed who

filed a bond in the Probate Court which required him to return an inventory; that he published notice of his appointment, but returned no inventory and did nothing further about settling the estate. Mrs. Bradley collected $98 back pay due her husband, and she received $20 a month pension from the time of his death. Her declarations made to Mrs. Sturtevant soon after her husband's death were in substance that her husband left no estate but left debts to the amount of $2,000 which she had paid. The testimony of Samuel E. Pingree was as follows: "Well, I remember Mrs. Bradley's coming to my office with a little memoranda she had made of how she wanted to give certain things. And as to the second item, she said that there was a life insurance that came from her husband to her to the amount of $5,000, and she thought she ought to give that money to certain nieces of Capt. Bradley whom she named. And the reason why she thought it ought to be so was because they were nieces Capt. Bradley loved very much, and asked me if I thought she ought not to do so. And she told me what she wanted to have go to make that up. There was some money in it and there were bonds that she had. What kind of bonds I don't know that I knew at that time. Perhaps not at any time. I had the custody of her papers a good many years until a good while after this will was drawn. That is all my attention has been called to."

The appellees claim for the testimony of Mr. Pingree that it only tended to identify the bequest to them, while the appellants contend that it was proof of the testatrix's intention—a fact that should be learned only from the will itself; also that it was incompetent as showing her instructions to the scrivener. Without passing upon the competency of the oral evidence, we think the intention of the testatrix was ascertainable from the will itself, when read in the light of the facts and circumstances that were proved without objection.

It is an important fact, evidenced by the second clause of the will, that the testatrix intended a substantial bequest to her husband's nieces. There was, indeed, no occasion for her to make a will, aside from the disposition of certain keepsakes, if she had desired to have all her property pass to her heirs-at-law. As she bequeathed bonds to the appellees it is presumable that she had in mind some bonds to answer the bequest. It is true she did not name the Olmstead and Bates bonds as the bonds bequeathed, but it appeared without objection as a fact in the case that she owned these two bonds at the time she made the will and that they were the proceeds of her husband's life insurance money; and the court says in the statement of facts found that it did not appear that she owned any other bonds. It was not unnatural that the testatrix in making the bequest should have regarded these bonds, which were the result of her husband's provision for her, as property which he left her. From these facts, that appeared without objection, and in the absence of evidence tending to show that her husband left any estate, it was a fair conclusion that the Olmstead and Bates bonds were intended by the testatrix for the appellees. It did not appear that there were other bonds to which the second clause of the will could apply.

II. It is contended by the appellants that there was an ademption of the Bates bond. The doctrine of ademption by acquisition applies to specific legacies only, and does not obtain in the case of general and demonstrative or pecuniary bequests. 1 Am. & Eng. Ency. 630, citing *Fryer* v. *Morris,* 9 Ves. jr. 360; Woerner on Admin. 973; *Walton* v. *Walton,* 7 Johns. Ch. 258.

The definition does not apply to this bequest. The manifest intention of the testatrix as shown by the second clause was, that her money and bonds on hand which she acquired through her husband should pass to his nieces. She evidently

17

had the amount and value of the property in mind and not its specific character. She coupled the two kinds of property together in the bequest and described them as money and bonds by way of identification and not for the purpose of making specific bequests, and they were given in gross amounts to the nieces, no specific items being designated to each. That the testatrix did not intend to adeem the Bates bond is shown by the fact that when it was paid the amount received for it was deposited in a savings bank where it was found at her decease to respond to the bequest.

*Judgment affirmed and ordered certified to the Probate Court.*