In the Matter of the Judicial Settlement of the Account of MARY HUBBELL POTTER and Another, as Executors, etc., of EDWARD WALDEN POTTER, Deceased, for the Acts and Doings of Said Decedent as One of the Executors, etc., of HARRIET EAMES POTTER, Deceased.*

CHARLOTTE POTTER WHITCHER, Individually and as One of the Executors, etc., of HARRIET EAMES POTTER, Deceased, Appellant; MARY HUBBELL POTTER and Another, as Executors, etc., of EDWARD WALDEN POTTER, Deceased, and Others, Respondents.

Fourth Department, March 27, 1935.

* See *post*, p. 887.

*Joseph H. Morey, Edward C. Schlenker, Arthur C. Minahan* and *Franklin R. Brown,* for the appellant.

*Joseph Swart, Edward L. Jellinek* and *B. Frank Dake,* for the respondents Mary Hubbell Potter and the Marine Trust Company of Buffalo, as executors.

*Helen Z. M. Rodgers* and *Welles V. Moot,* for the respondents Russell Hayward Potter, Jr., and Mary McWilliams Davis.

SEARS, P. J.   The testatrix's husband, George R. Potter, died August 2, 1888.   By his last will and testament he made his widow, the testatrix in this proceeding, his residuary legatee and devisee. His will contained this language: " I also request my dear wife to make her will and so divide what I have left her between my children that each may have as near as she can get at it, and taking into consideration what each already has, an equal amount of this world's goods."   As the residuary legatee and devisee of her husband, the testatrix in this proceeding received a large amount of real estate and personal property.   Personal property included securities, chattels and money.   The testatrix's husband left surviving him four children, two by a former marriage, Edward W. Potter and Russell H. Potter, and two, the issue of his marriage with the testatrix, Charlotte Potter, now Charlotte Potter Whitcher, the appellant, and George Eames Potter.   The will of the testatrix,

about which the controversy now before us centers, was dated July 22, 1925, and a codicil thereto, not important here, was dated May 21, 1926. On March 7, 1922, George Eames Potter died, leaving a widow but no descendants. Russell H. Potter is still living. Russell H. Potter received large donations from the testatrix during her lifetime and no question has arisen in respect to the provisions for him.

The material parts of testatrix's will are as follows:

" I do hereby make two divisions or parts of my last Will and Testament, by one of which I dispose of the property left to me by my late husband, as nearly as possible in compliance with his wishes, and by the other of which I dispose of the property which came to me and which I received from other sources.

## " FIRST DIVISION.

" *First.* By this first division or part of my last Will and Testament, I dispose of the property left to me by my late husband, George Russell Potter.   *   *   *

" *Third.* I give and bequeath to my executors hereinafter named, the sum of Fifty Thousand ($50,000.00) Dollars, in trust; the said moneys shall not be paid in cash unless my trustees hereinafter named, deem it advisable so to do, and they are hereby authorized to transfer to the trust estate hereby created, real or personal, property of the value of Fifty Thousand ($50,000.00) Dollars, or they may set aside both real and personal property of the value of Fifty Thousand Dollars ($50,000.00), and such property or money shall be held by them upon the following express trust: The said trustees, if real estate be set aside by them, may convert the same into cash, and shall purchase therefor first class securities. The income from such trust fund shall be used by the said trustees for the maintenance and support of my son Russell Hayward Potter,   *   *   *.   I make no further or other provision for my said son Russell Hayward Potter on account of the large sums which I have heretofore given and loaned to him and this provision is made for my said son in lieu of all other provisions which I might have made for him.   *   *   *

" *Sixth.* I give, devise and bequeath all the rest, residue and remainder of the estate which came to me from my late husband unto my son Edward Walden Potter and unto my daughter Charlotte Potter Whitcher, share and share alike, to them and their heirs forever.   *   *   *

## " SECOND DIVISION.

" I do now come to the second division or part of my estate, and I do hereby intend to devise and dispose of all other property

of which I may die seized or possessed, of every kind, nature and description whatsoever, having hereby, by the first division of this my last Will and Testament disposed of the property which came to me or which was left to me by my late husband. * * *

" *Thirteenth*. I give, devise and bequeath all the rest, residue and remainder of my estate which is comprehended or embraced under the second division of this my last Will and Testament, unto my daughter, Charlotte Potter Whitcher, of Santa Barbara, California, to her and her heirs forever.

" *Fourteenth*. I do hereby direct that all State Inheritance or Transfer Taxes, and all Federal Estate Taxes which may be payable by any legatee or devisee, or which may be assessed or levied against any devise or bequest contained in this my last Will and Testament, either in the first or second divisions or parts thereof, shall be paid out of my residuary estate to the end that all legacies, bequests and devises shall be paid to the legatees and devisees free of all charges, taxes and deductions."

The principal controversy in this case relates to the identification of the property described in the sixth paragraph. It appears that the testatrix, after settling her accounts as executrix of her husband's will in 1892, continued to have kept for her until her death on November 27, 1929, an account of the property which she had received from her husband and the income thereon, including sales of property and reinvestments. It is the holding of the learned surrogate that under the language of the sixth paragraph of the will there is to be included not only property which the testatrix received from the estate of her husband upon the settlement of her accounts as executrix of his will and which she still had at the time of her death in kind — that is, in the same form in which she received it — but also the proceeds of sales and exchanges of such property as well as all the property acquired by her through investment and reinvestment of the proceeds of sales of such property and also the unexpended income therefrom and property resulting from the investment and reinvestment of income. The account kept for the testatrix, with some minor corrections, has been held to list correctly the property passing under this clause. The appellant, Charlotte Potter Whitcher, however, contends that only those properties which the testatrix received from her husband upon the settlement of her accounts as executrix of his will which she still held at her death in the form in which she received them, are to be included within the scope of the sixth paragraph. We do not fully agree with either of these claims but have reached the conclusion that within the provisions of the sixth paragraph there is to be included not only the property which the testatrix received

from her husband upon the settlement of her accounts as executrix, and which she still had at the time of her death in the same form in which she received it, but also all proceeds of sales of such property and all property acquired by exchange for such property or by purchase with the proceeds of sales of property so received by her from her husband, and all properties resulting from the sale and further investment of the proceeds of the sales of any such properties as far as the same can be traced. In other words, we are of the opinion that this provision was intended to cover the property received by the testatrix from her husband's estate and all property into which she converted any such property so far as such conversion can be traced, but that it does not include income therefrom. (*Moore* v. *Moore*, 29 Beav. 496; *Morgan* v. *Thomas*, L. R. 6 Ch. Div. 176; 2 Jarman Wills [7th Eng. ed.], 1051.)

If the application of the first division of the will is confined, as the appellant contends, to the property held in kind by the testatrix at the time of her death, she has failed signally to carry out her expressed intention of disposing of the property left to her by her husband in compliance with the intention of equal division expressed in his will. More than thirty-five years elapsed between the receipt by the testatrix of her husband's residuary estate and the making of this will. Before executing the will, she had already disposed of a large amount of securities and property, and in the ordinary course of events she must have contemplated action in the future of a similar kind. It is only if we construe the provisions of the first division of the will as including not only property received in kind, but property into which by sale and reinvestment of the proceeds of the sale or by exchange, such original property has been converted, as being included within the content of the testamentary disposition in the first division, that anything approaching an equality of division between the children of her husband can be accomplished. We do not disregard the authorities relating to the ademption of specific legacies (*Matter of Ireland*, 257 N. Y. 155; *Matter of Brann*, 219 id. 263), but the problem here is not primarily one of ademption but of description as in *Matter of Martin* (252 N. Y. 582).

If it is impossible to trace the proceeds of sales of securities received from her husband, there cannot then be taken from the estate an equivalent amount to apply it to the first division. Only property possessed by the testatrix at her death and received from her husband which is held in kind or which can be shown to be property into which property received from her husband has been converted by the testatrix, falls within the first division of the estate.

As to income, the description of the first division is not broad enough to include it. Income was not property received from her husband. It is property which had its origin during the testatrix's lifetime and although its source in one sense is property received from her husband, still it represents the wife's right to use the property and in the absence of clear expression of intention, cannot fairly be described as property coming to the testatrix from her husband.

There is one other provision of the decree from which this appeal is taken which requires consideration in view of the interpretation which we give to the first division of the will, namely, the fourteenth paragraph, in which it is directed that all State inheritance or transfer taxes and all Federal estate taxes be paid out of the residuary estate to the end that all legacies, bequests and devises be paid free of charges, taxes and deductions. As we construe the so-called residuary clause in the first division of the will, paragraph sixth, to be itself a specific legacy, subject only to certain demonstrative legacies, we conclude that the bequest and devise in the sixth paragraph is not the residuary legacy out of which the transfer and inheritance taxes, charges and the like are to be paid. The second division in paragraph thirteenth contains a genuine residuary clause and it is out of the bequest and devise there expressed that the taxes, charges and deductions are to be cared for.

Although upon the record before us, including the voluminous exhibits, it might be possible to determine under the rule expressed the content of the specific bequest and devise contained in the sixth paragraph and this court has power even to treat the matter *de novo* and take additional proof, still we believe it to be more satisfactory to remit this proceeding, so far as it relates to the tracing of property and the content of the specific bequest, to the Surrogate's Court to proceed in accordance with this opinion.

The decree, in so far as appealed from, should, therefore, as to the construction of the will, be modified on the law to construe the will in accordance with this opinion, and as so modified the decree as to the construction of the will should be affirmed, and the decree as to the accounting should be reversed on the law, and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion, with costs to each party appearing by a separate attorney and filing a brief, payable out of the estate.

All concur, except THOMPSON and CROSBY, JJ., who dissent in an opinion by THOMPSON, J., and vote for reversal on the law in part and remission to the Surrogate's Court and otherwise for affirmance, without costs. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

THOMPSON, J. (dissenting). That we may determine the disposition which should be made of certain of the property comprised in decedent's estate, we must examine the following clauses of her will:

"I do hereby make two divisions or parts of my last Will and Testament, by one of which I dispose of the property left to me by my late husband, as nearly as possible in compliance with his wishes, and by the other of which I dispose of the property which came to me and which I received from other sources.

### "FIRST DIVISION.

"*First.* By this first division or part of my last Will and Testament, I dispose of the property left to me by my late husband, George Russell Potter.   *   *   *

"*Sixth.* I give, devise and bequeath all the rest, residue and remainder of the estate which came to me from my late husband unto my son Edward Walden Potter and unto my daughter Charlotte Potter Whitcher, share and share alike, to them and their heirs forever.   *   *   *

### "SECOND DIVISION.

"I do now come to the second division or part of my estate, and I do hereby intend to devise and dispose of all other property of which I may die seized or possessed, of every kind, nature and description whatsoever, having hereby, by the first division of this my last Will and Testament disposed of the property which came to me or which was left to me by my late husband.   *   *   *

"*Thirteenth.* I give, devise and bequeath all the rest, residue and remainder of my estate which is comprehended or embraced under the second division of this my last Will and Testament, unto my daughter, Charlotte Potter Whitcher, of Santa Barbara, California, to her and her heirs forever.

"*Fourteenth.* I do hereby direct that all State Inheritance or Transfer Taxes, and all Federal Estate Taxes which may be payable by any legatee or devisee, or which may be assessed or levied against any devise or bequest contained in this my last Will and Testament, either in the first or second divisions or parts thereof, shall be paid out of my residuary estate to the end that all legacies, bequests and devises shall be paid to the legatees and devisees free of all charges, taxes and deductions."

Decedent was the widow of George R. Potter, who died August 2, 1888. Decedent, two children by a former marriage, and two children of his marriage with her, survived him. He left a last will and testament in which he named his wife sole executor. It

was admitted to probate and letters testamentary were duly issued to decedent. She administered the affairs of the estate, until her accounts were finally settled, and she was discharged February 12, 1892. Among other things, the will contained the following clause:

"*Fifth.* The rest and residue of all my estate, real and personal, I give and bequeath to my dear wife, Harriet Eames Potter, her heirs and assigns forever, and I request her to care for and provide for my mother-in-law, Mrs. Sally Hayward, during the life of said Mrs. Sally Hayward. I also request my dear wife to make her will and so divide what I have left her between my children that each may have as near as she can get at it, and taking into consideration what each already has, an equal amount of this world's goods."

Respondents claim that the provisions of the will by which decedent disposed of the property left to her by her late husband evince a clear testamentary intent that so much of her estate as could be traced to property which came to her from her husband's estate, whether in the identical form in which she received it, or avails of it, was all " property left to me by my late husband," and should, in all the circumstances, pass under the provisions of the first division of her will. Appellant contends that the provisions in question admit of but one construction, namely, that testatrix intended to make a specific disposition of the property she derived from her husband's estate, which, at her death, should be found in the identical form in which she received it. Upon the trial, testimony was introduced by respondents from which the learned surrogate has found that from the time decedent took office as executrix of her husband's estate, and continuing down to her death, a period of some forty years, she kept the property which she received from her husband, and its income and avails, separate and apart, and that she kept an account of it, and of property which she received from other sources, and their proceeds, in separate books. This testimony was offered by respondents for the sole purpose of identifying the property. It was not offered upon the subject of the interpretation or meaning of the testamentary provisions of the will.

The learned surrogate has not decided in terms that the provisions of the will are ambiguous, or that they are of such uncertain meaning as to permit the receipt or application of testimony extrinsic the instrument for the purpose of arriving at their meaning. But he has determined that the provisions in question dispose not only of identical properties passing to decedent by the will of her late husband which she did not dispose of during her life, but also

of the proceeds of the disposition and reinvestment of the property of his estate, so passing to her, and of the income thereof, of which she was seized or possessed at the time of her death. In this we think the learned surrogate fell into error.

In arriving at the effect to be given these provisions, we cannot depart from the actual domain of the will, unless the meaning of the words used is ambiguous. " The first and great rule in the exposition of wills to which all other rules must bend is that the intention of the testator expressed in his will shall prevail." (MARSHALL, Ch. J., in *Smith* v. *Bell*, 6 Pet. 68.)

" Where there is no ambiguity, either patent or latent, there is no field open for construction of the will." (*Dwight* v. *Fancher*, 217 App. Div. 377, 380; *Matter of Watson*, 262 N. Y. 284, 293; *Matter of Silsby*, 229 id. 396.)

There is no ambiguity here. Gathering decedent's testamentary intent from the words used, we find that it was her will that if specific property should be found in her estate, which, and as it, came to her from her husband's estate, it should pass under the first division of her will. In clear and certain terms the provisions set forth a bequest and devise of specific property. (*Crawford* v. *McCarthy*, 159 N. Y. 514; *Matter of Matthews*, 122 App. Div. 605.) It follows that property of decedent's estate, which she acquired from the proceeds or reinvestment of proceeds, sales or income of property which came to her from her husband, does not pass under the first division of her will, but its disposition is to be determined by the provisions of the second division. In such case the change of the nature of the property, which decedent received from her husband into other forms, works an ademption of the legacies and devises in the first division of the will. If the subject of the devise or bequest was not in existence at the time of decedent's death, there was an extinction or withdrawal of the gift. (*Matter of Ireland*, 257 N. Y. 155, 158.) In *Matter of Brann* (219 N. Y. 263) Judge CARDOZO says (at p. 268): " It was once thought that ademption was dependent on intention, and ' it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law ' (*Slater* v. *Slater* [L. R. (1 Ch. 1907)], 665, at p. 671). It has ceased to be law in England (Jarman, p. 163; *Slater* v. *Slater, supra*). It has ceased to be law in New York (*Ametrano* v. *Downs*, 170 N. Y. 388). What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."

Appellant also contends that a proper interpretation of the will — particularly of the provisions in which testatrix directs that all

estate taxes shall be paid from her residuary estate, and that certain upkeep charges in connection with a devise of a house and lot for a term of years, shall be paid out of her estate — requires that said taxes, upkeep charges and also the expenses of administration shall be charged to the residuary funds arising upon the administration of the estate passing under both the first and second divisions of her will, in proportion to the appraised value of the assets disposed of by each division. The learned surrogate has held that these payments are to be made from the residuum arising upon the administration of the estate under the provisions of the second division of her will. In view of our determination that the testamentary provisions of the first division of decedent's will are specific, there can be only one residuary fund, and that will be as it is erected under the residuary clause contained in the second division of the will. The first division carries only specific transfers. There can be no residuum there. In any event the property passing under it being specifically bequeathed and devised, could only be resorted to for the payment of debts and administration expenses in case the property not specifically devised or bequeathed should be insufficient for that purpose. (*Blood* v. *Kane*, 130 N. Y. 514, 517; *Toch* v. *Toch*, 81 Hun, 410, 414.) The second division, however, contains general and residuary directions. This is the residuary clause of the entire will. (*Beekman* v. *Bonsor*, 23 N. Y. 298, 312; Thompson on Construction of Wills [1928 ed.], § 341.)

In the respects indicated, the decree should be reversed; in all other respects, it should be affirmed, and the matter remitted to the Surrogate's Court, to proceed in accordance with this opinion. Neither party to this appeal having been wholly successful, costs should not be awarded.

CROSBY, J., concurs.

Decree in so far as appealed from, should, as to the construction of the will, be modified on the law to construe the will in accordance with the opinion, and as so modified the decree, as to the construction of the will, should be affirmed; and as to the accounting, the decree should be reversed on the law and the matter remitted to the Surrogate's Court with directions to proceed in accordance with the opinion, with costs to each party appearing by separate attorney and filing brief upon this appeal, payable out of the estate.