ALBERT W. SPEYERS ET AL. *v.* MARY E. MANCHESTER, EXECUTRIX (WILL OF HILDEGARDE S. HILLHOUSE).

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 10, 1944—decided February 21, 1945.

*I. Gordon Colby, Jr.,* and *Stanley Daggett,* for the appellants (plaintiffs).

*Frederick H. Wiggin* and *Catherine J. Tilson,* with whom was *W. H. D. Pell,* of the New York bar, for the appellee (defendant).

MALTBIE, C. J.  This is an appeal from probate involving the rights of the parties under the provisions

of the will of Hildegarde S. Hillhouse, late of New Haven. Among the legacies contained in the will were several which made gifts to certain of her relatives and to others, and the will provided that these legacies "are from my property, other than that received by gift or will from my late husband James Hillhouse," with a further provision that, should "the value of said property" exceed or be less than the amount of the legacies, those to the members of her family should be increased or should abate proportionately. The executrix of Mrs. Hillhouse's estate filed an inventory and account in both of which she segregated certain assets of the estate as property owned by the testatrix other than that received by her from her husband, and in the account she included a statement of amounts due to the legatees to whom reference has been made above, based upon the value of the property so segregated. In making the division of the assets of the estate, the executrix included in the property regarded as received by the testratrix from her husband not only securities which were distributed to her from her husband's estate and still held by her at her death and certain securities received from him which had been changed merely in form but also securities bought with the proceeds of the sale of assets which were received from him but had been disposed of by her, as well as the amount in a savings account in her name at her death, a substantial part of a sum of money in a checking account in her name at her death and certain cash items. The Probate Court accepted the inventory and accepted and allowed the account, and this appeal was taken to the Superior Court; that court sustained the action of the Probate Court except as to one small item; and from that decision the relatives of the testatrix whose gifts were to be paid from property other than that received by the testatrix from her husband

have appealed. The trial court held that the property received by the testatrix from her husband included everything owned by her at her death which she had acquired as a result of gifts made to her by her husband in his lifetime or in his will. The plaintiffs, on the other hand, claim that the property received by the testatrix from her husband cannot include anything beyond such items, so received, as she held at her death without change except in mere matter of form.

In passing, we note the unusual situation presented upon this appeal. So far as appears, the inventory of the estate was accepted and the final administration account was allowed on the same day, and the appeal was taken from these two orders. No order of distribution has been made. The case was tried and all parties have argued the appeal before us as presenting the issue between the parties which we have outlined. We have decided to consider the appeal from the allowance of the administration account as sufficient to present the issues without inquiring whether the procedure was in all respects a proper way in which to raise them. Conn. App. Proc., § 22. We shall, in our discussion, use the word plaintiffs in referring to the appellants, that is, the testatrix' relatives who claim that the trial court erred in failing to include various assets of the estate in the property not received from her husband, and we shall refer to the beneficiaries under the will who oppose that claim as the defendants.

In the forefront of the questions presented in this case are certain rulings of the trial court in admitting evidence offered by the defendants. This evidence consisted of certain correspondence between the testatrix and her attorney, a memorandum made by the testatrix as a basis for drafting a will previous to the one before us, that will, certain codicils to it thereafter

executed, a paper, signed by the testatrix, entitled "List of Securities belonging to Hildegarde S. Hillhouse apart from those inherited from her husband or given to her by him," and various oral statements made by her. These were all claimed and were admitted for the purpose of identifying the testatrix' property "other than that received by gift or will from my late husband," to which the will refers.

The conditions for the admission of statements by a testator either written or oral for the purpose here claimed, as the cases hereinafter cited will show, have been held by us to be that there is a latent ambiguity in the words of the will, that the statements serve to explain the meaning of those words, as by identifying something to which the language was intended to refer, and that they are not dispositive in their nature. In *Spencer* v. *Higgins,* 22 Conn. 521, a testator bequeathed to his wife "all the furniture, and all the property she brought with her at the time of our intermarriage." At the time of the marriage she had owned certain notes of a par value of $1000; as these were paid, the proceeds were deposited in savings banks, partly in her name and partly in that of the testator, but he later transferred most of the money deposited in his name into her account; and at his death the sum of $1860.29 stood in her name on the books of the bank, of which $950 represented principal and the balance interest. At the trial evidence was received, over objection, not merely of the way in which the notes and their proceeds had been dealt with but of statements made by the testator at various times, both before and after he made the will, in which he spoke of the money as the property of his wife and in which he declared to her and others that he would have nothing to do with it. We held the evidence admissible and concluded that the widow was entitled to the en-

tire amount of the deposit. In the course of the opinion, we pointed out (p. 526) that evidence of surrounding circumstances was admissible, not to alter in any way the intent as expressed in the will, but "to see how the language shall be applied, and in this collateral particular, to learn the intent and meaning of the testator." We further said (p. 527) that it was obvious that the testator's wife "must resort to parol proof, to identify the property which she is to take"; we pointed out that the word *"property,* is one of large import"; and we said (p. 529) that those who were claiming against the widow "dwell, with emphasis, on the last words of this clause, 'and all the property she brought with her, *at the time of our intermarriage.'* These words, they insist, are definite, and, *ex vi termini,* exclude all interest and profits *subsequent* to the marriage, although they constitute, as yet, a part of the principal itself; and, on this ground, they say, that no parol proof can be received, to show that the testator intended this interest or profit should be included in the language used in the will. We are satisfied, these words are not words of exclusion, but of *description,* and that the testator, by the language used, gave his widow, *all her property indiscriminately,* whatever was its form or its value, which she brought with her, and *which he had always treated as bearing that description."*

In several cases before and after *Spencer* v. *Higgins,* supra, we have held statements of a testator admissible for the purpose of determining the proper application of the language of his will. *Ayres* v. *Weed,* 16 Conn. 291, 302; *Fairfield* v. *Lawson,* 50 Conn. 501, 510; *First National Bank & Trust Co.* v. *Baker,* 124 Conn. 577, 585, 1 Atl. (2d) 283; see *Mechanics Bank* v. *Yale University,* 111 Conn. 452, 461, 150 Atl. 526. In a late Massachusetts case, *Gray* v. *McCausland,* 314 Mass.

743, 51 N. E. (2d) 441, the Supreme Judicial Court had before it a will bearing rather close resemblance to the one we are considering, in that a widow made a certain disposition of "all the property of every name and nature left me by my late husband . . . as shown in the inventory of his estate," and made other disposition of her own "property apart from that left me by my late husband"; statements made by her to her confidential adviser and letters written by her to her stepchildren were held admissible; and the court said (p. 747): "In reaching this conclusion we make no use of any declarations of testamentary intent or of the testatrix's opinion of the meaning of her will. We use the evidence only in so far as it helps to put us in the position of the testatrix, so that we may know the facts that she had in her mind when she chose her words, in order that we may judge of the sense in which she used them. We are well within the established bounds." In the light of these and other authorities we might cite, we have no hesitance in concluding that the words of the will we are considering cannot, when applied to the circumstances surrounding the testatrix, be held to be so definite and certain as to preclude an inquiry through the use of extraneous evidence as to their meaning and application to the estate left by the testatrix, and that oral or written statements made by her which tend to show the sense in which she used those words, not dispositive in their nature, are properly to be considered.

The plaintiffs, in contending that the evidence in question was inadmissible, do not treat separately the various items involved but make a general claim that it is all inadmissible. They do, however, call particular attention to a letter written by the testatrix' attorney to her on November 18, 1939, about seven months prior to the execution of the will before us. In this

letter the attorney stated his understanding of the testatrix' intention with reference to the division of property she owned between her own relatives and her husband's, and requested that, if his understanding was not correct, she advise him to that effect. If this letter stood alone, there might be serious question as to its admissibility; but the attorney had been in correspondence and frequent communication with the testatrix almost from the time of her husband's death; he had drawn the previous will executed by her and various codicils to it; the letter in question was in reply to one from her in which she had called his attention to the amount of certain of the legacies to her relatives in the first will, with the statement that she had not realized that "some of the securities belonging to me were those which were bought with the proceeds of the bonds called, which Mr. Hillhouse had given me as his gift"; and thereafter she made no change in the will and codicils she had previously executed until the will we are considering, as in all probability she would have done had her attorney been mistaken in his understanding. The letter was a part of a course of dealing with reference to her disposition of her property, and the trial court could properly regard it in connection with the other evidence as indicating what was in her mind when she made the will before us. 7 Wigmore, Evidence (3d Ed.), § 2120; and see *Hoggson & Pettis Mfg. Co.* v. *Sears*, 77 Conn. 587, 593, 60 Atl. 133. There was no error in the admission of evidence.

No sufficient purpose would be served by reviewing in detail the facts which led the court to its conclusion that the testatrix meant to include in the property received by gift or will from her husband not only securities given to her by him before his death or received under his will which she still retained un-

changed or changed only in form but also securities which were acquired by her after she had sold property received from her husband under such circumstances that they represented the property she had sold. We shall content ourselves with specific reference to two matters only. In the earlier will of the testatrix to which we have referred, she included legacies similar to the nine here in question, but amounting in the aggregate to $22,100. That will provided only that these legacies should be paid from her property "other than that received under the will of my late husband." By a codicil executed shortly thereafter, the quoted words were changed to read "other than that received from my late husband," and a further provision was added that the legacies to her relatives should be proportionately increased or abated, if the value of her property exceeded or fell short of the amount so given. As we have already related, the testatrix, in a letter written to her attorney after the execution of the codicil but before the execution of the will before us, stated that when she made the legacies to her relatives she did not realize that "some of the securities belonging to me were those which were bought with the proceeds of the bonds called, which Mr. Hillhouse had given me as his gift." While it does not appear from the finding that at this time any bonds given her by her husband had been called, it is there found that before the letter was written bonds of a par value of $23,000 given her by her husband in his lifetime had been sold, and the proceeds invested in other securities. These do not appear in the "List of Securities" not received from her husband. If their value had been added to that of property she owned concededly not so received, the aggregate would have very considerably exceeded the amount of the legacies given to her relatives in the first will. Nevertheless, in the will

before us she reduced the aggregate amount of the legacies to her relatives from the $22,100 given in the previous will to $16,000, although she did retain the provision for a proportionate increase or decrease should her property not received from her husband exceed or fall short of the amount given. The trial court has found that her reason for reducing the legacies was that she believed she had made a mistake as to the amount of her property apart from that received from her husband.

The paper signed by the testatrix on which appears the "List of Securities belonging to Hildegarde S. Hillhouse apart from those inherited from her husband or given to her by him" was brought by her to Miss Mary E. Manchester, named by her in the last codicil to her will as an alternate executrix and after her death so appointed. At that time, after a discussion, certain items were added. Two of these were seventy-five shares of stock of the Connecticut Light and Power Company and twenty shares of stock of the New Haven Water Company. Among certain securities given to the testatrix by her husband during his life were a number of United States treasury bonds of a par value of $24,000. She sold these in order to obtain funds to pay taxes and charges on her husband's estate, of which she was executrix, and used the proceeds for that purpose. Subsequently, in payment of this advance and of a fee of $10,000 allowed to her as executrix, two hundred and seventy-five shares of the Connecticut Light and Power Company stock, seventy-two shares of the New Haven Water Company stock and cash amounting to $1668.96 were transferred to her. Later the Light and Power Company issued other stock in place of the shares so transferred to her. When she was discussing with Miss Manchester the "List of Securities" not received from

her husband, the matter of including in that property the fee she had received as executrix was discussed, and she decided that, as she had earned the money, she wanted it included. Miss Manchester then figured that seventy-five shares of the Light and Power Company stock and twenty shares of the Water Company stock would represent the amount of the fee; and these stocks were included in the list as property not received from her husband. The remaining shares of stock of the two companies were treated by her as substitutes for the treasury bonds given to her by her husband which she had sold.

The circumstances involved in these two transactions strongly point to the fact that she intended to include in the property received from her husband "by gift or will" property given to her by him during his lifetime and securities which she bought as the result of the sale of property received from him and sold by her. This is confirmed by the inclusion in the will before us of property received by the testatrix from her husband "by gift," because at the time the will was made all the securities given to her by him in his lifetime had been sold and other securities had been bought in place of them, none of which appear in the "List of Securities" not received from him.

The plaintiffs contend, however, that, as in most instances where the testatrix sold property received from her husband the proceeds were placed in her bank account and intermingled with her other funds, any securities subsequently bought from that account cannot be regarded as so representing property received by gift or will from her husband that they are to be treated as within that class. As they say in their brief, we are not confronted with a question of a technical tracing of funds such as might be presented where there had been breach of trust. The question is, did

the testatrix intend to include in property received from her husband securities so bought. In one instance, during the life of her husband, her brokers sold certain bonds he had given her and purchased other securities at a price exceeding by $116.99 the amount received from the sale, and she sent them a check drawn on her personal checking account to cover that difference; and, while it does not directly appear, it would be a fair inference from other facts and the documentary evidence before us that there had been deposited in her checking account at that time income from securities given to her by her husband which exceeded the amount so drawn from it. In two instances, the amount realized from bonds given to her by her husband during his life was deposited in the testatrix' bank account and within a day or two thereafter money to an amount in each case somewhat smaller was withdrawn to purchase other securities. A similar situation arose out of the sale of certain stock she received under her husband's will. These transactions all took place before the will we are considering was executed, and before the testatrix had made the "List of Securities" belonging to her apart from those received from her husband; but none of the securities purchased were included in that list. The trial court could well conclude that it was not her intent, in using the language she did, to include them among the property not received from her husband, even though the money paid on the sale of the original securities passed through her bank account and the price paid on the purchase of the new securities did not exactly correspond with, and in one case slightly exceeded, that received on the sales. The trial court was correct in its conclusion that the testatrix intended to exclude from the category of property not received from her husband securities owned by her at her death which were

acquired as a result of the sale of property she actually did receive from him under such circumstances that those securities really represented that property.

Industry of defendants' counsel has brought to our attention the following authorities, in addition to those previously cited, which in a greater or less degree support this conclusion. *Reynolds' Estate,* 11 Pa. Dist. 387; *In re Bradley's Will,* 73 Vt. 253, 257, 50 Atl. 1072; *American Bible Society* v. *Noble,* 32 S. C. Eq. (11 Rich. Eq.) 156, 170; *Weber* v. *Dickerson,* 248 Ky. 552, 59 S. W. (2d) 14; *Matter of Potter,* 244 App. Div. 130, 133, 278 N. Y. S. 436, aff'd, 269 N. Y. 545, 199 N. E. 663; and see s. c., 251 App. Div. 679, 297 N. Y. S. 295, aff'd, 278 N. Y. 534, 16 N. E. (2d) 93; *Morgan* v. *Thomas,* 6 Ch. D. 176, 179; *Moore* v. *Moore,* 29 Beav. 496, 54 Eng. Rep. R. 720; and to these cases we add *M'Lemore* v. *Blocker,* 5 S. C. Eq. (Harp. Eq.) 272; nor have we overlooked *Mitchell* v. *Danforth,* 66 Mass. (12 Cush.) 330; *Nusly* v. *Curtis,* 36 Colo. 464, 468, 85 Pac. 846, and *Tayloe* v. *Bond,* 45 N. C. 5, 17, which point to an opposite conclusion.

The testatrix, in connection with the sale of bonds given to her by her husband in order to secure funds to provide money to meet charges on her husband's estate to which we have referred, sold also for a like purpose certain bonds she owned which had not been received from him. When she was discussing the "List of Securities" not received from him with Miss Manchester, she stated that, when she made out the list, she had overlooked the item, and it was added as $2761.68 in cash, "representing . . . Bonds . . . loaned to the estate and sold for this amount . . . and repaid by Estate to H.S.H." In the administration account this item appeared as a part of the property from which the plaintiffs' legacies were to be paid, with the further statement: "representing part of the cash on deposit

in decedent's checking account." No other cash was entered in the "List of Securities" not received from her husband.

In the inventory of her estate, it appears that the testatrix had a savings bank account in which, at her death, there was a balance of $555.19. A transcript of the account from 1930 is an exhibit made a part of the finding. On September 17, 1938, the date of her husband's death, there was a balance in that account of $674.99, and on June 10, 1940, that balance had increased to $702.38. On the latter date, the testatrix deposited in the account the proceeds of the sale of certain real estate her husband had devised to her, $1293.40; and this was the only deposit made in the account after his death. On October 29, 1941, the testatrix withdrew $1500 to purchase two United States defense savings bonds. At her death a slip of paper was found in the savings bankbook which stated that the deposit of $1293.40 represented the proceeds of the sale of the real estate and that that amount "plus $206.60 belonging to Hildegarde S. Hillhouse" had been invested in the bonds. The amount on deposit at her death was the balance after that withdrawal, with additions of interest. These bonds were purchased after the making of the "List of Securities" not received by the testatrix from her husband. The trial court concluded that they constituted property received from testatrix' husband but that, as they cost more than the proceeds of the sale of the lands to the extent of $206.60, this amount should be accounted for as money not so received.

The situation with reference to these bonds differs materially from that presented by any of the securities we have discussed. As they were bought after the testatrix had made the "List of Securities" not received from her husband, the fact that they do not

appear on it is of no significance; and there can be no question, from the testatrix' own statement, that they represented, in part, her funds. They could not be correctly described as representing property received from her husband, for they did so only in part, though it was the major part. To regard them as property received from her husband would not be to identify property so received and it would give to the language of the will not an extended but an untrue meaning. There is no basis for holding, as the trial court in effect did, that securities were to be regarded as property received from him where they represented such property only in part, with a charge for the portion representing the testatrix' own funds upon some other assets left by her which would otherwise go to the persons to whom she gave the property she received from him. The testatrix may have intended that these securities should in fact go to those persons; but the words of the will, even when read in the light of surrounding circumstances, are insufficient to accomplish that purpose. These bonds were not "property . . . received . . . from my late husband"; and they fell within the class of "my property, other than that" so received.

It appears in the inventory that the testatrix at her death had on deposit in the checking account $11,506.57. At the death of her husband she had in this account $2645.52. Deposits thereafter made, to the amount of $26,791.37, represented cash payments made to her as sole legatee under her husband's will, and, to the amount of $14,300, payments made to her as widow's allowance. Other deposits were for the most part dividends or interest on securities; among these were dividends received by her upon those appearing in the "List of Securities" not received from her husband; at times dividends from both classes of securities were included in a single deposit; as regards

the stocks placed on the list as representing her fee as executrix, which were a portion of a greater number of shares she owned in the companies, the dividends upon all the stock she owned in a company were entered as a single sum; and in one instance there was a deposit of a single sum representing the sale of rights to acquire stock part of which appeared in the list of property not received from her husband and part of which was received by her as legatee in his will. Total deposits in the account amounted to $89,967.93. There were withdrawals amounting to $79,547.05, with checks amounting to $1086.52 outstanding at testatrix' death; but what use was made of the money so withdrawn, except for the purchases of securities which have been noted, is not found. In addition it appears in the inventory that cash to the amount of $121.17 was found, after the testatrix' death, in her house, as were other "cash items": two dividends on stocks included in the list of property not received from her husband, amounting together to $154.50, defense stamps to the amount of $6 and two refunds, the nature of which does not appear. The effect of the account filed by the executrix was to include in the property classified as received by the testatrix from her husband the balance in the savings account, $555.19; the amount in the checking account less the sum of $2761.68 above referred to, that is, $8774.89; and the cash and cash items.

The testatrix, of course, owned all the property included in the inventory of her estate; but in her will she expressed an intent to divide it into two portions, property received from her husband by gift or will and property not so received. In so far as the trial court included in the former property securities which were bought as the result of the sale of property received by her from her husband and which could reasonably

be regarded as representing that property, we have sustained its conclusions. The cash items present a situation quite similar to that of the defense bonds. As regards the savings account, only two deposits were made subsequent to the gift of securities to the testatrix in her lifetime; one of these, as we have stated, represented the proceeds of the sale of land devised to her, and the source of the other is not found. Her statement that the money which, added to that representing the sale of the real estate, was used to purchase the defense bonds was her money indicated that, except for the proceeds of the sale of the land, this account did not represent property received from her husband. Indeed, the trial court in the judgment recognized that the excess amount necessary to buy the bonds could not be regarded as received by the testatrix from her husband; and, if that is so, it is difficult to see on what basis it could sustain the executrix in accounting for the balance of that account as property received from him. Much the same situation exists as to the money in the testatrix' checking account. That includes, according to the finding, $2761.68, which the executrix accounted for as property not received from the testatrix' husband; and the exhibit made a part of the finding shows that income from securities not representing property received from her husband went into that account to a considerable extent. As far as the cash on hand is concerned, its source does not in any way appear. To hold these items to be property received by her from her husband is to put in that class assets which represent in part money not received directly or indirectly from him. The only circumstance which in the least points to the conclusion that they belong in that class is the testatrix' failure to include them in the "List of Securities" not received from her husband. The list is one of

"Securities" and the natural import of that word would not include bank accounts or these cash items. Indeed, the fluctuating nature of the checking account in itself suggests that it would not naturally be included in such a list. By the note left in the savings bankbook she in effect stated that, though not mentioned in the list, the savings account was not property received from her husband. It is true one cash item was included in that list, as has been noted, but that expressly represented certain bonds not received by the testatrix from her husband, which she had sold; and it is not a reasonable inference from the mention of that cash item that she regarded as property received from her husband all other cash or "cash items" she had on deposit or on hand when she made the list, or might have on hand or on deposit at her death. We can find no warrant for including in the property received by the testatrix from her husband the balances in the savings and checking accounts or the cash or "cash items."

The plaintiffs have devoted a considerable portion of their brief to a contention that the testatrix, by the sale of certain of the specific securities given to her by her husband, to that extent adeemed the gifts in the will to the beneficiaries to whom she intended to leave the property received from her husband; but the interpretation of the will as including in that property securities bought by her as a result of these sales makes this contention inapplicable. *Morgan* v. *Thomas,* supra, 179; *Reynolds' Estate,* supra, 388. Nor are we concerned with the question as to the burden of proof upon the issue of the identification of the property the testatrix received from her husband, involving the subsidiary question as to which of the groups of beneficiaries is to be regarded as receiving specific legacies and which as the residuary legatees; the circumstances do

not leave the issues in such doubt that they need to be resolved upon the basis of determining where the burden of proof lay.

The account of the executrix should be corrected to include in the property not received by the testatrix from her husband the United States defense savings bonds and the items appearing in the inventory under the heading "Cash and Cash Items," with such other incidental changes as these corrections may require.

There is error in part, the judgment is set aside and the case is remanded with direction to enter judgment as now on file, except as it must be corrected to accord with this opinion.

In this opinion the other judges concurred.