STATE OF CONNECTICUT *v.* LOUIS JEUSTINIANO

STATE OF CONNECTICUT *v.* VICTOR MONTANEZ

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued November 11, 1976—decision released January 18, 1977

*Charles Hanken,* with whom, on the brief, was *Joseph Mirsky,* for the appellants (defendants).

*Eugene J. Callahan,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

LONGO, J.   The defendant Victor Montanez was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1).   After a trial

by a jury he was found guilty as charged and sentenced to a term of not less than five nor more than ten years. The defendant Louis Jeustiniano was tried by a jury pursuant to a one-count information charging him with assault in the first degree in violation of General Statutes § 53a-59 (a) (1). He was found guilty of assault in the second degree in violation of General Statutes § 53a-60 and sentenced to a mandatory five-year term of imprisonment. Both defendants have appealed to this court from the judgments rendered. The defendant Montanez claims that (1) the court erred in admitting the victim's entire hospital record into evidence and (2) the state failed to prove that the injury sustained by the victim was a "serious physical injury" as defined by General Statutes § 53a-3 (4). The defendant Jeustiniano makes claims identical to those of Montanez and also claims that (1) the court erred by admitting testimony by a police officer concerning a conversation with a physician relative to the victim's injuries and (2) the court erred by denying his motion for a continuance to seek the attendance of a witness. Since the cases arise from the same factual situation and since the defendants' claims overlap, we shall consider their appeals in a single opinion.

At the trial, evidence was presented from which the jury reasonably could have found the following facts: On the evening of July 1, 1973, Rafael Lopez crossed the street from his grocery store to a grocery store operated by the defendant Victor Montanez where he encountered Montanez, the defendant Jeustiniano and Mrs. Montanez. Lopez and Montanez discussed business for one-and-one-half to two hours during which time Mrs. Lopez also crossed the street and became embroiled in an

argument with Mrs. Montanez in the street. A crowd gathered and had to be dispersed by the police, who remained in the area in the event of further trouble. Later that evening, as Mrs. Lopez was closing the store, she was struck on the head by a bottle thrown by Mrs. Montanez, and the two women recommenced their altercation. While the women were fighting Jeustiniano stepped into the street, produced a pistol, fired a shot and told the women to stop fighting or he would kill someone. Lopez told Jeustiniano to stay out of the fracas, whereupon Jeustiniano pointed the pistol at Lopez and Lopez knocked Jeustiniano to the ground. As the two struggled, Lopez was shot in the hip and forearm by Montanez. Lopez fell on top of Jeustiniano and, as they lay struggling together on the ground, Jeustiniano fired a shot which struck Lopez in the groin. Police officers who had remained in the area following the disturbance earlier that evening heard the four shots and arrived on the scene immediately. They disarmed the defendants, Montanez and Jeustiniano, and took them into custody. Lopez was taken by ambulance to the Bridgeport Hospital where he was treated for three gunshot wounds and released on July 11, 1973. He was readmitted in September, 1973, for surgery on his wounded left arm.

Both defendants allege that the hospital record of Rafael Lopez was improperly admitted in evidence. The defendants first claim that their counsel had insufficient opportunity to review the record before trial. The defendants point out that Practice Book § 228 requires that medical records be available for inspection in the clerk's office for twenty-four hours before trial. It is unclear from the record whether this requirement was met.

Regardless of that fact, we do not find the defendants' claims appropriate. When the record was offered at trial, the court inquired of counsel if he would like to inspect it before it was admitted. Counsel responded that he would and court recessed to allow him to do so. Following the recess, counsel objected to the admission of the record on the grounds that its introduction was not accompanied by expert testimony and that the defendants were denied an opportunity to cross-examine the authors of the entries. Counsel did not object on the ground that he was not allowed adequate time to inspect the record. Since that claim is raised for the first time on appeal, it is not properly before this court. *State* v. *Malley,* 167 Conn. 379, 355 A.2d 292; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576; *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750.

The defendants also press their claim that it was error to admit the entire record without excluding those parts which were irrelevant to a determination of the issues in the case. Though this court has recognized that it may be necessary to exclude parts of an otherwise admissible record; *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 561, 364 A.2d 217; *Temple* v. *F. W. Woolworth Co.,* 167 Conn. 631, 633, 356 A.2d 880; *Ianni* v. *Daily,* 153 Conn. 445, 217 A.2d 707; the principle is not relevant to this case since counsel failed, at trial, to designate the portions of the record he found objectionable. For this court now to rule parts of the record inadmissible would require us to lay down a rule that the trial court is under a duty to sift through the record and, acting on its own, exclude objectionable evidence. We have repeatedly held that counsel cannot shift to the court the burden of spotting objectionable evidence. *State* v. *Lemieux,* 160 Conn. 519, 522,

280 A.2d 874; *Zheutlin* v. *Sperry & Hutchinson Co.*, 149 Conn. 364, 368, 179 A.2d 829; *D'Amato* v. *Johnston*, 140 Conn. 54, 62, 97 A.2d 893.

The defendants also assign error to the admission of the hospital record on the ground that they were denied an opportunity to cross-examine the persons who made the entries. This claim is without foundation in the law. The legislature, in General Statutes § 4-104, has specifically made hospital records admissible without supporting testimony.[1] Even before passage of General Statutes § 4-104 it was firmly established in Connecticut that hospital records were admissible as business entries under the predecessor to General Statutes § 52-180. In speaking of that statute this court stated: "The statute expressly provides that business entries which are admissible under it shall not be rendered inadmissible by reason of the failure to produce as witnesses the persons who made them. It contemplates, therefore, that there need be no opportunity afforded to cross-examine those who made the entries if as a matter of fact the entries are admissible as business entries under its provisions." *D'Amato* v. *Johnston*, supra, 62; see General Statutes § 52-180.

---

[1] "[General Statutes] Sec. 4-104. INSPECTION AND SUBPOENA OF HOSPITAL RECORDS. . . . Any and all parts of any such record or copy, if not otherwise inadmissible, shall be admitted in evidence without any preliminary testimony, if there is attached thereto the certification in affidavit form of the person in charge of the record room of the hospital or his authorized assistant indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions, occurrences or events recorded therein or within a reasonable time thereafter."

The defendants also claim that it was erroneous, in the light of the complicated nature of the hospital record, to admit it without expert interpretive testimony. It is clear that, since the record was admissible under General Statutes § 4-104, neither party was required to produce testimony to interpret it. Either party could have produced such evidence, but the failure of the state to do so cannot affect the admissibility of the evidence. *D'Amato* v. *Johnston,* supra.

The defendants next claim that the state failed to sustain its burden, under General Statutes § 53a-59 (a) (1) and § 53a-60, of proving that the victim sustained "serious physical injury." In the case of Montanez there was evidence from which the jury could have found that he shot Lopez in the right hip and the left forearm. Lopez spent ten days in the hospital immediately following the incident and was readmitted two months later for surgery on his forearm. The bullet which passed through his arm severed tendons and a nerve and damaged the radial artery. There was testimony that the arm would never completely recover. Serious physical injury is defined by General Statutes § 53a-3 (4) as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." The degree of the injuries suffered by Lopez was a proper question for the jury to decide if sufficient evidence were introduced. *State* v. *Monte,* 131 Conn. 134, 135, 38 A.2d 434; *State* v. *Smith,* 49 Conn. 376, 389. This court's task in reviewing the sufficiency of the evidence to sustain the verdict of a jury is to construe the evidence as favorably as possible with a view toward sustaining the verdict and then

to decide whether the verdict is one which jurors acting reasonably could have reached. *State* v. *Brown,* 169 Conn. 692, 364 A.2d 186; *State* v. *Wright,* 169 Conn. 256, 257, 362 A.2d 983. The parties agree that the distinction between "serious physical injury" and "physical injury"[2] is elusive. Despite the difficulty of drawing a precise line, in the light of the testimony that Lopez suffered impairment of the functioning of his left arm and hand, we cannot hold, as a matter of law, that he did not suffer serious physical injury.

In the case of Jeustiniano, there was also sufficient evidence from which the jury could have found that he inflicted serious injury on the victim Lopez. From the evidence the jury could reasonably have found that Jeustiniano shot Lopez in the groin, causing the loss of a testicle. This injury clearly falls within the statutory definition contained in General Statutes § 53a-3 (4).

The defendant Jeustiniano next assigns error in the ruling of the trial court which allowed a police officer, Detective Walter Brackett, to testify from his report concerning a conversation with the victim's physician, Francis Williams, relative to the extent of the victim's groin injury. The defendant objected to the testimony on the grounds that it constituted hearsay and exceeded the permissible scope of cross-examination. The statements made by Detective Brackett were out-of-court statements, repeated in court for the purpose of proving the truth of the matter asserted therein and were, therefore, clearly excludable as hearsay since they did not fall within any recognized exception to the

---

[2] General Statutes § 53a-3 (3) defines physical injury as "impairment of physical condition or pain."

rule excluding such statements. *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 268 A.2d 639; *Obermeier* v. *Nielsen,* 158 Conn. 8, 11, 255 A.2d 819. Our analysis, however, cannot end with a determination that a ruling on the admission of evidence was erroneous. It must also be demonstrated that the party against whom the evidence was introduced was thereby harmed. *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585. The appellant has the burden of establishing that a ruling was harmful. *Obermeier* v. *Nielsen,* supra, 12; *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153; *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742. An erroneous ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case. *Obermeier* v. *Nielsen,* supra. It would be an unduly harsh rule to hold in this case that even though evidence had already been properly placed before the jury, its reiteration through impermissible means required reversal of an otherwise reasonable verdict. *State* v. *Tropiano,* supra, 427. Detective Brackett was called to the stand twice during the present case, first by the state and then by the defendant. Upon cross-examination by the defendant, Detective Brackett testified from his report that Williams had told him that Lopez was shot in the left forearm and in the testicles. Following this testimony, the defendant called Detective Brackett. On cross-examination, when the state elicited substantially the same statements from Detective Brackett, the defendant objected. Though the doctrine of harmless error must be applied with caution, particularly when an individual's liberty hangs in the balance,

we find its application to this situation warranted. The witness' testimony was little more than a recitation of his earlier statements and could, therefore, not have harmed the defendant. *State* v. *Hoyeson,* 154 Conn. 302, 309, 224 A.2d 735; see *Mei* v. *Alterman Transport Lines, Inc.,* supra. We also cannot find reversible error in the defendant's claim that the state exceeded the proper scope of cross-examination in questioning Detective Brackett. The reasoning applied above establishes that even if the questioning did exceed the proper scope of cross-examination, the testimony thereby elicited was not harmful to the defendant.

Finally, the defendant Jeustiniano claims error in the court's refusal to grant him a continuance to procure the attendance of a witness. Four days into the trial, Detective Charles Lundberg was called by the state to explain the absence of Williams, the physician who had treated the victim, Lopez. Detective Lundberg testified that the physician was the object of a subpoena issued by the state but that the Bridgeport hospital had informed him that Williams would be away from the area for three weeks. The next day the defendant moved for a continuance to attempt to locate Williams. The court denied the motion, stating that it would not continue a criminal case with a jury for such a lengthy period. The court also refused to continue the case until the next morning.

This court has often stated that the decision whether to grant a continuance rests in the sound discretion of the trial court. *State* v. *Olds,* 171 Conn. 395, 370 A.2d 969; *State* v. *Bethea,* 167 Conn. 80, 355 A.2d 6. In *State* v. *Bethea,* supra, 84, we endorsed the holding of the United States

Supreme Court that a " 'myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler* v. *Fretag,* 348 U.S. 3 [75 S. Ct. 1, 99 L. Ed. 4]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921." In the present case the jury were already empaneled and the trial was well underway when the continuance was requested. The defendant's counsel was unable to demonstrate that he had made any effort to secure the attendance of the witness in question. The trial court refused to grant the delay unless there was some indication that it would prove successful. This court must make every reasonable presumption in favor of the proper exercise of the trial court's discretion. *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750. The aggrieved party, therefore, assumes a heavy burden when seeking to reverse the exercise of judicial discretion. Were our standard any less strict we would impose an intolerable burden on trial courts who must daily exercise their discretion on difficult questions which do not lend themselves to definite answers. We find that the court's denial of a continuance was within its discretionary powers.

There is no error.

In this opinion the other judges concurred.