KATHLEEN RIDGEWAY *v.* RONALD RIDGEWAY

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 7—decision released May 13, 1980

*Arthur M. Field,* for the appellant (plaintiff).
*David P. Ball,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This appeal is from the judgment rendered in a contested marital dissolution case and challenges the entry of certain orders in that proceeding.[1] The plaintiff, Kathleen Ridgeway, brought an action against the defendant, Ronald Ridgeway, for dissolution of their marriage,

---

[1] Although this appeal is taken from the judgment, the plaintiff does not brief any error in the entry of the decree of dissolution itself.

alleging that it had broken down irretrievably. She also sought custody of and support for the three minor children, alimony, the transfer to her of the jointly held family home and counsel fees. The defendant admitted the allegations of the plaintiff's complaint and filed a cross complaint, also based on irretrievable breakdown, in which he sought a dissolution, custody of the three minor children and a conveyance of the plaintiff's interest in the family home. Because the wife sought a continuance and did not wish to go forward on the complaint, the court went forward on the cross complaint.[2] The case was heard on June 27, 1978, as a contested matter. The court rendered judgment on the cross complaint dissolving the marriage and awarded custody of the children to the defendant with visitation to the plaintiff each Sunday from 1 p.m. to 5 p.m. "or at such reasonable time as the parties may agree." The court also referred to the family relations division for investigation and report the matter of more extensive visitation, including overnight visitation. Alimony of one dollar per year was ordered, and the plaintiff was ordered to transfer her interest in the family home to the defendant and, contemporaneously therewith, the husband was ordered to deliver to the plaintiff a promissory note and a mortgage on that real estate to secure the note in the principal amount of $30,000 with interest to be payable monthly at the rate of 6 percent per annum. The principal was to be payable on January 26, 1988,[3] or at such time that the property was

---

[2] Although the case was heard on the defendant's cross complaint, for the purpose of clarity we shall refer to Kathleen Ridgeway as the plaintiff and to Ronald Ridgeway as the defendant.

[3] We note that January 26, 1988, would be the date on which the youngest of the minor children of the marriage would become eighteen years of age.

sold or upon the death of the husband, whichever occurred first. The defendant was given the option of paying off the note and mortgage prior to the occurrence of any of these events. The defendant was also ordered to pay the sum of $400 toward the plaintiff's counsel fees as well as up to $150 for the fee of a physician, Dr. Gianetti, who testified for the plaintiff. The plaintiff has appealed and raises several claims, which we address individually.[4]

At the outset we take up the plaintiff's claims that the court erred in denying her motion for a continuance on June 27, 1978, and proceeding with the trial on that day. Essentially, she claims the court erred in ruling that she was competent to proceed and to participate properly in the trial. The case had been marked ready for trial in January, 1978, April, 1978, and again in June, 1978, a week before the trial was actually held. Each time it was reached for trial, the plaintiff's attorney requested a continuance for the same reason, the incompetence of his client. The week before the trial, the trial court informed defense counsel that, if a further continuance was sought for that reason, it was its opinion that the defendant was entitled to have that issue decided. On June 27, 1978, the plaintiff's counsel orally moved for a continuance, to which defense counsel objected, indicating that he wished to proceed. At that time, plaintiff's counsel had in

---

[4] Although the trial court filed its memorandum of decision prior to the date on which the requirement for a finding was abolished, the plaintiff did not request a finding. Because both parties have treated this case as though it were governed by the new rules and any difficulty occasioned by the application of these rules should be resolved so as to facilitate business and advance justice; Practice Book, 1978, §§ 3164, 3166; we have treated the appeal as the parties have. See *Speyers* v. *Manchester*, 131 Conn. 598, 601, 41 A.2d 783 (1945); Maltbie, Conn. App. Proc. § 42.

attendance Dr. David Gianetti,[5] a psychiatrist, who had treated the plaintiff. Gianetti was examined and cross-examined, and the court also inquired of him. He testified that he first saw the plaintiff in December, 1976, and had last seen her about two months prior to the trial; that she had been an inpatient at a city hospital for about six weeks ending in April, 1977; that she suffers from "a rather severe thought disorder, as well as emotional disorder," that primarily concern the fear of "her life being monitored by those who are unknown to her"; and that her fear of "being monitored" causes her at times to discuss the worthlessness of life under such conditions both for herself and her children, whom she believes are also being "monitored." Gianetti also testified that her preoccupation with "monitoring" impairs her judgment and affects her ability to participate with her attorney to protect her interests in the proceedings.

Gianetti acknowledged, however, that he was aware that the plaintiff, since her discharge as an inpatient, had been and still was taking courses successfully at Sacred Heart University in Bridgeport in math, history and political science; that she had also attended the University of Bridgeport; that she held a part-time job in a supermarket for about six months prior to the trial; and that she had applied for and passed a civil service examination and would begin a full-time position with the social security administration on July 3, 1978. These considerations did not alter his "impaired judgment" diagnosis. Gianetti believed that when the plaintiff instituted the divorce proceedings and at the time of the hearing she knew what she was doing and that the

---

[5] Gianetti later testified at the trial in chief as a witness for the plaintiff.

proceeding would end in the dissolution of her marriage, although he believed that she did not understand all the consequences of the proceeding. At the trial itself, the plaintiff testified that she knew the nature of the proceeding and that the judge would make certain decisions concerning the parties' marriage, their property and the custody of their children.

This court will only find error in the grant or denial of a motion for a continuance "if a clear abuse of the trial court's discretion is shown. *Rusch* v. *Cox,* 130 Conn. 26, 32, 31 A.2d 457 (1943); *State* v. *McLaughlin,* 126 Conn. 257, 260, 10 A.2d 758; *Allen* v. *Chase,* 81 Conn. 474, 477, 71 A. 367." *State* v. *Best,* 171 Conn. 487, 492, 370 A.2d 1035 (1976). Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. See *State* v. *Jeustiniano,* 172 Conn. 275, 285, 374 A.2d 209 (1977); *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750 (1971). As a general rule, a somewhat stronger showing must be made to support a motion for a continuance where the moving party has obtained prior continuances, particularly where the claim is premised on the ill health of a party. See annot., "Continuance of Civil Case Because of Illness or Death of Party," 68 A.L.R.2d 470, 490 et seq. The record discloses that the court held a thorough hearing on the plaintiff's claim and participated by inquiry to assist in resolving the issue. The trial court certainly was not bound to accept the expert's testimony insofar as it tended to support the plaintiff's claim. *Stewart* v. *Stewart,* 177 Conn. 401, 402–403, 418 A.2d 62 (1979). See *Themper* v. *Themper,* 132 Conn. 547, 549, 45 A.2d 826 (1946).

Moreover, even one whose thought processes are impaired to the extent of being insane has a legal capacity to sue or be sued, provided he has not been formally adjudicated an incompetent and placed under the guardianship of another. See *Kirwan* v. *State,* 168 Conn. 498, 502, 363 A.2d 56 (1975); 41 Am. Jur. 2d, Incompetent Persons § 115; annot., 71 A.L.R.2d 1247 § 2. The court may, as the circumstances warrant, appoint a guardian ad litem to ensure that the interests of the person who may be incompetent are adequately protected. See *Kirwan* v. *State,* supra; General Statutes § 45-54.

In this case, the court concluded, as it was entitled to, that the plaintiff was competent. Furthermore, the plaintiff was represented by counsel of her own choosing. Nothing in the record indicates that her counsel failed adequately to protect her interests in the matter. Cf. *Gentry* v. *Warden,* 167 Conn. 639, 645, 356 A.2d 902 (1975). While there is no mechanical test for determining when the denial of a continuance is so arbitrary as to violate due process or amount to an abuse of discretion, the record before us amply discloses that the court's decision in this regard was fully justified. See *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *State* v. *Jeustiniano,* 172 Conn. 275, 285, 374 A.2d 209 (1977).

While our decision on this ground makes it unnecessary for us to address the plaintiff's claim that the court erred in failing to appoint a guardian ad litem to protect her interests, we briefly address the claim that the court erred in failing to appoint a guardian ad litem for the benefit of the minor children. Not only was no motion made for such an appointment, there was also no evidence indicating

that the interests of the minor children would not otherwise be adequately protected. Under General Statutes § 46b-54, the court "may" appoint counsel to protect the interests of a minor child in a dissolution action if it deems it to be in the best interests of the children. The term "may" imports discretion; see *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 428, 226 A.2d 380 (1967); and there is no basis for concluding that the trial court abused its exercise of discretion in this respect.

The plaintiff also attacks the court's award of custody of the minor children to the defendant and the visitation rights granted to her. The defendant had temporary custody of the children since the plaintiff left the family home in December, 1976 until the dissolution decree was rendered some eighteen months later. To make provision for the care and supervision of the children while the defendant was working, the defendant's parents began to reside in the family home each week from Monday through Friday. The defendant, who was a carpentry foreman, added two bedrooms and another bathroom to the three bedroom raised ranch home to accommodate his parents. The children and grandparents got along well. Prior to the decree the plaintiff visited the children at the family home on Sundays from 1 p.m. to approximately 4 or 5 p.m. On occasion her visits had a good effect upon the children, but on occasion her visits upset them because of her speaking to them "about the perverts and people monitoring her home." This has affected the oldest boy and bothers him to the extent that on some nights he cannot sleep. Gianetti, who also testified for the plaintiff at the trial in chief, was examined concerning the plaintiff's problems. It was his

opinion that if the court granted her custody of the children there was a reasonable possibility that she could harm herself or the children or both.

This court has consistently held in matters involving child custody, and, by implication, visitation rights, that while the "rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child which must control the decision of the court." *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926 (1976), quoting *In re Appeal of Kindis,* 162 Conn. 239, 242, 294 A.2d 316 (1972); see General Statutes § 46b-56 (b). In making this determination, the trial court is vested with broad discretion which can only be interfered with upon a clear showing that that discretion was abused. *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978); *Simons* v. *Simons,* 172 Conn. 341, 349, 374 A.2d 1040 (1977); *Palmieri* v. *Palmieri,* supra. In this case, the evidence showed that the children were living in a familiar and stable environment with love and attention from their paternal grandparents; that the plaintiff at times had an adverse effect upon the children; and that the plaintiff's psychological instability was such that it posed a threat to the children's well-being. Moreover, Gianetti recommended that the plaintiff immediately commence inpatient psychiatric treatment at a hospital. Under the circumstances, we cannot say that the trial court abused its discretion. We note also that while the one-day visitation rights of the plaintiff are somewhat limited, the court also referred the possibility of more extensive visitation, as well as overnight visitation, to the family relations divi-

sion for investigation and report. It is clear that the court's order in this regard was directly related to the plaintiff's uncertain psychological condition.[6]

We turn now to the plaintiff's claims concerning the award of one dollar per year periodic alimony. The plaintiff argues that the court erred in awarding no more than one dollar per year, in accepting the defendant's financial affidavit, and in failing to award her medical insurance or some form of medical protection. The plaintiff's claim that the court erred in its reliance upon the defendant's financial affidavit, which she alleges contained inaccuracies, is without merit. The plaintiff claims that certain debts of the defendant shown on the affidavit no longer existed, that his salary was inaccurately reported, and that certain expenses were unjustified. Any changes in the defendant's financial position between the preparation of his financial affidavit and the hearing were brought to the court's attention. Contrary to the plaintiff's suggestion, it was the defendant who informed the court of his salary increase. The court did not err in relying upon the affidavit as modified.

With respect to the amount of alimony, we note that the defendant assumed all of the plaintiff's debts, including the unreimbursed hospital bills, doctor bills and the balance of a bank loan and charge accounts and that he gave the plaintiff the family automobile. The plaintiff, who lived with her parents, had supported herself for the eighteen

[6] Although the plaintiff claims that the court erred in failing to order a report concerning custody of the children under General Statutes § 46b-6, it is clear from a reading of that section that the decision of the court is discretionary. While it may be helpful to a judge deciding a custody dispute to obtain the disinterested assessment such a report should provide, we do not believe, under the facts of this case, that the court was required to do so.

months immediately preceding the trial. She was to start a full-time position with the social security administration the week of the trial. There was evidence that the plaintiff would be entitled to certain medical insurance coverage as a result of her employment. Under the circumstances we find no abuse of discretion in the order of periodic alimony; the court could reasonably have concluded as it did. See *El Idrissi* v. *El Idrissi*, 173 Conn. 295, 299, 377 A.2d 330 (1977); *deCossy* v. *deCossy*, 172 Conn. 202, 205, 374 A.2d 182 (1977).

We do point out that because some alimony was awarded, with no preclusion of modification, if the circumstances warrant, a change in the award can be obtained at some future time. See General Statutes § 46b-86; *Swayze* v. *Swayze*, 176 Conn. 323, 337, 408 A.2d 1 (1978).

The plaintiff also challenges the property settlement. She contends that the court should have ordered that the family home be held by the plaintiff and the defendant as tenants in common and that the home be sold when the youngest child reaches the age of eighteen. This, she argues, would have given her the benefit of appreciation in market value between the decree and the youngest child's eighteenth birthday. While this proposal has some appeal, the trial court elected instead to order the plaintiff to transfer to the defendant her interest in the home in exchange for a promissory note, secured by a mortgage on the premises, in the amount of $30,000. This order provides the plaintiff with additional income of $150 per month, while the defendant continues to pay the first mortgage in the amount of $12,153. The court's decision was not

outside of the scope of General Statutes § 46b-81.[7] The plaintiff also claims that the court erred in refusing to award the plaintiff any interest in the personal property of the parties. About one-half of the personal property is furniture in the family home and it seems reasonable that that property, in this case, should go to the party who has the real estate and the duty of furnishing shelter for the minor children. With respect to the remaining relatively small amount of personal property, we have had occasion many times to say that the assignment of property in a marital dissolution rests in the sound discretion of the court. See *Posada* v. *Posada,* 179 Conn. 568, 572, 427 A.2d 406 (1980); *Fucci* v. *Fucci,* 179 Conn. 174, 181, 425 A.2d 592 (1979); *Lee* v. *Lee,* 174 Conn. 5, 7–8, 381 A.2d 529 (1977). Again, we cannot say that the court could not reasonably conclude as it did.

There is no error.

In this opinion the other judges concurred.

---

[7] The plaintiff also asserts that the court erred in not basing its conclusion as to the fair market value of the home upon a professionally prepared appraisal. The court's conclusion was based upon an estimate provided by the defendant, who testified that he was familiar with the value of similar properties in that area. As a rule, the owner of property is competent to testify concerning its fair market value, and the weight to be accorded such testimony is for the trier to decide. *Misisco* v. *La Maita,* 150 Conn. 680, 684–85, 192 A.2d 891 (1963); 3 Wigmore, Evidence (Chadbourn Rev.) § 714, p. 50.