## STATE OF CONNECTICUT *v.* MITCHELL ROTHENBERG (11883)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and BIELUCH, Js.

Argued December 13, 1984—decision released February 19, 1985

*Jacob D. Zeldes,* with whom was *Robert A. Harris,* for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom was *John M. Massameno,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is the sufficiency of the evidence to sustain the conviction of the defendant, Mitchell Rothenberg, of sexual assault in the first degree in violation of General Statutes § 53a-70[1] and of unlawful restraint in the first degree in violation of General Statutes § 53a-95.[2] After a trial to the court, the defendant was found guilty on both charges and judgment was rendered accordingly. The defendant appeals from the judgment against him.

The trial court reasonably found the following facts. The defendant and the complainant met at a bar in Southbury during the early morning hours of August 23, 1981. The complainant recognized the defendant as someone she had met there previously. They danced. The defendant asked the complainant to accompany him to a party at a friend's condominium in Woodbury. Somewhat reluctantly, the complainant agreed and drove to the condominium in her own car.

When the couple arrived at the condominium, it appeared to be empty. In fact, however, the two

---

[1] At the time of the alleged crime, General Statutes § 53a-70 provided: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

General Statutes § 53a-91 (1) provides: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (a) deception and (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement."

bedrooms, although their doors were closed, were occupied throughout the events that then transpired. The owner of the condominium was in one bedroom and two guests were in the other.

After a brief tour of the condominium, the complainant and the defendant sat on a couch in the living room. They kissed and the defendant gave the fully clothed complainant a back rub. The complainant, at the defendant's request, gave him a back rub while he was clad only in his undershorts.

The complainant then told the defendant that she wanted to leave, but he told her that she could not go. On the pretext of wanting to use the bathroom, the complainant ran to and partially opened the front door of the condominium. The defendant closed the door and forcibly prevented her from leaving by holding her arms. The complainant could not persuade the defendant to let her leave the condominium but was allowed to use the bathroom, where she remained for approximately thirty minutes while she looked for a way to escape or a weapon. During this time, the defendant alternately promised that he would let the complainant leave and threatened to wake up his friend to join the harassment of the complainant if she did not leave the bathroom.

As the complainant emerged from the bathroom, the defendant took her by the arms and pulled her, struggling, to the living room couch. Fearing injury if she were to resist further, the complainant then submitted. The defendant sexually assaulted the complainant several times before finally releasing her.

The unseen occupants of the bedrooms in the condominium remained there throughout the night. One did not hear either the defendant or the complainant at all. The others heard sounds of conversation when

the defendant and the complainant first entered the condominium, but soon thereafter fell asleep and heard nothing further.

The defendant does not deny the occurrence of the sexual activity but contends that the state failed to prove that it was anything other than consensual. He raises four issues on appeal: (1) the insufficiency of the evidence to sustain his conviction; (2) the inadmissibility of prejudicial evidence about his character; (3) a right to have the judgment vacated in order to permit additional evidence to be introduced; and (4) a violation of the prohibition against double jeopardy. We find no error.

I

The defendant claims that the evidence adduced at trial to support his conviction was insufficient in two respects. First, the defendant argues that the complainant's testimony that the defendant restrained and sexually assaulted her was unbelievable as a matter of law in light of the totality of the evidence at the trial. Second, the defendant claims that the evidence showed that he lacked the criminal intent necessary to a finding of guilt. We find neither assertion persuasive.

On the first point, the defendant claims that the complainant's account of the events at the condominium is fatally undermined by the evidence given by the occupants of the bedrooms. The complainant testified that the defendant had "slammed" the front door during her escape attempt and had "yelled" at her while she was in the bathroom. The other people in the condominium testified that they had heard nothing beyond normal conversation and had slept throughout the incident. According to the defendant, the juxtaposition of this evidence necessarily validates his contention that the complainant's continued presence in the condominium and participation in the sexual activity was consensual.

The defendant's argument fails to recognize that, in determining the credibility of witnesses, the trier of the facts may properly believe all or part of the testimony of a witness. See *State* v. *Bradley,* 134 Conn. 102, 105, 55 A.2d 114 (1947), cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 1112 (1948). The contours of the determination of credibility are uniquely shaped by the trial court and are not reviewable on appeal. "The trier of the facts determines with finality the credibility of witnesses and the weight to be accorded their testimony." *State* v. *Penland,* 174 Conn. 153, 157–58, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). The trial court could have believed the complainant's testimony that the defendant prevented her from leaving, and forcibly imposed himself upon her, without giving significant weight to her account of how loudly the defendant spoke or how noisily he closed the door. Alternatively, the court could have disbelieved the testimony of the occupants of the bedrooms. Viewing the evidence, as we must, in the light most favorable to sustaining the judgment of the trial court; see, e.g., *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983); we conclude that the trial court could reasonably have found that the evidence established the defendant's guilt beyond a reasonable doubt. See *State* v. *Rutan,* 194 Conn. 438, 444, 479 A.2d 1209 (1984); *State* v. *Haddad,* 189 Conn. 383, 387, 456 A.2d 316 (1983).[3]

The defendant's second claim of insufficiency of the evidence relies upon the trial court's own finding that the complainant's conduct was ill-advised and subject to misconstruction. The trial court did find that the

[3] The defendant attempts to buttress his claim by noting there was conflicting testimony regarding the transmittal by the victim of her telephone number to the defendant after the alleged assault. Since the trial court could have reasonably decided the question of credibility in a manner consistent with the defendant's guilt, this evidence adds nothing to the defendant's claim of error.

complainant "committed a serious error in judgment when she accompanied the defendant, a young man whom she knew only slightly, to an unknown location, where she really had no idea what might confront her. And once there, she compounded her error in judgment by her voluntary conduct in engaging in intimate physical contact with the defendant, who was almost completely unclothed. In the Court's view, this was a foolhardy act of very poor judgment that was subject to misinterpretation by a young man, such as the defendant, as indicative of a willingness to engage in more explicit sexual conduct. I am satisfied in my own mind that this is essentially what happened. The defendant did misconstrue the complainant's conduct and concluded that she would, in fact, be a willing participant in further sexual activity." According to the defendant, this finding proves that he was mistaken about the complainant's consent and therefore lacked the mental state necessary to commit the charged offenses.[4]

This argument would be compelling had the trial court's opinion ended where the defendant's quotation stops. The trial court went on, however, to find that

---

[4] At oral argument the defendant cited *State* v. *Green*, 194 Conn. 258, 480 A.2d 526 (1984), for the proposition that first degree sexual assault is a specific intent crime, and argued that his mistake negated this intent. See General Statutes § 53a-6 (a) (1). Because any mistake on the defendant's part was dispelled before the defendant performed the criminal acts; see text, pp. 258–59; this claim fails regardless of the intent element of the offense. However, lest the defendant's claim create misunderstanding, a brief discussion of this issue is necessary.

The defendant's reading of *State* v. *Green* is mistaken. It is well settled that first degree sexual assault is a general intent crime. See, e.g., *State* v. *Johnson*, 185 Conn. 163, 176, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Truppi*, 182 Conn. 449, 455 n.4, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). The statement in *Green* relied upon by the defendant, that "[a] specific intent to commit sexual assault in the first degree is an essential element of that crime" refers to the crime of *attempted* first degree sexual assault. *State* v. *Green*, supra, 274.

"[w]hen the complainant sought to withdraw from the situation, a situation that was developing beyond her expectations, the defendant was unwilling to permit her to do so. And he thereafter forced his attentions on the complainant and compelled her to engage in sexual intercourse against her will. The defendant failed to recognize that consensual sexual relations are one thing, forced sexual intercourse is something altogether different. The term 'consensual sexual relations' means full consent, and that clearly implies that a party should always be free to decline to go beyond a certain point. This the complainant tried to do. The defendant refused to honor this decision of the complainant and permit her to leave. For this he must be and is found guilty of both offenses as charged in the information." The trial court's finding in its totality makes it clear that the complainant's unambiguous request to leave the condominium disabused the defendant of any misinterpretation of her wishes. The defendant's conduct thereafter was knowingly coercive. A temporary misunderstanding about consent does not give irreversible license to compel sexual intercourse. There was ample evidence to support the trial court's finding and the defendant's conviction.

## II

The defendant's second claim of error is that the trial court should have excluded testimony about his prior sexual history, just as the court upheld objections to similar questions asked of the complainant on her cross-examination. Under General Statutes § 54-86f,[5] evi-

---

[5] "[General Statutes] Sec. 54-86f. ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the prior sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her prior

dence of the sexual history of a sexual assault victim is now admissible only in clearly and narrowly defined circumstances established in a separate hearing. The defendant urges us to hold that the policy represented by that statute is as applicable to defendants as it is to complaining witnesses. In either case, he maintains, the prejudicial effect of evidence of prior sexual conduct, in the absence of special circumstances, far outweighs its probative value.

The defendant questions the admissibility of evidence concerning his prior activities at the Southbury bar and his prior visits to the condominium with other women whom he had met at that bar.[6] Although the defend-

---

sexual conduct, or (3) evidence of prior sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party, the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

General Statutes § 54-86f was enacted in 1982 and became effective on October 1, 1982, just after the close of the defendant's trial. Minor amendments were made in 1983 by Public Acts 1983, No. 83-113.

[6] The defendant's challenge relates to the following testimony which was elicited by the state's attorney when cross-examining the defendant:

"Q. Did you go [to the bar] for the purposes one would normally go to a singles bar, to meet single young ladies?

"Mr. Barnes: I object to that.

"The Court: Overruled.

"Mr. Barnes: Exception.

"The Witness: I went there for a number of reasons. One, they had good bands, good music, I like to dance. And most certainly to meet single women.

"By Mr. Murray:

ant objected at trial to the admission of this testimony, he did not then advance the reasoning upon which he

"Q. Have there been other occasions you have gone to [that bar] alone and left with a young lady?

"Mr. Barnes: I object again, your Honor.

"The Court: Overruled.

"Mr. Barnes: Exception.

"The Witness: Yes.

"By Mr. Murray:

"Q. You have gone back to this condominium?

"A. Yes.

"Q. More than once?

"A. Yes.

"Q. And you said, I think, that you stayed at the condominium some eight or nine times prior to this particular occasion. These eight or nine times, would there be a majority of the time you have gone to [the bar] and returned there with one young lady or another?

"A. I would have to say two or three times.

\* \* \*

"Q. From the time you got out of the car to enter the [bar] to the actual time you left with [the complainant] was between fifteen minutes and twenty-five minutes; is that correct?

"A. Closer to fifteen.

"Q. Is that a personal record or is that average?

"A. I'm not like that, as far as having records. Whatever happens happens.

"Q. Fifteen minutes was pretty good time to accomplish the purpose of finding a young lady and leaving to come back to the condominium, wasn't it?

"Mr. Barnes: Your Honor, I have to object to this testimony. This is beyond cross examination.

"The Court: This is cross examination.

"Mr. Barnes: It's beyond the scope of cross examination, your Honor. It's becoming argumentative. I think it certainly is beyond what is proper before this Court, getting into a discussion as to whether he has a record of accomplishments or not.

"The Court: I suppose it goes to his credibility and also his motives on this particular evening, his intentions. I consider it very relevant.

"Mr. Barnes: I'll take exception to your Honor's ruling then.

"The Court: Yes.

"Mr. Murray: I'm not sure what the question was. Could I have it read back?

"(Pending question read by reporter.)

"By Mr. Murray:

"Q. Was it?

"A. I was surprised.

"Q. Pleasantly?

"A. Yes."

now relies. In the main, his objections were devoid of any specific grounds. On the one occasion when a specific objection was taken, the defendant's proffered grounds were that the challenged question was beyond the scope of cross-examination and argumentative. In response to that claim, the trial court noted that the evidence was admissible because it was relevant to the defendant's credibility, motive and intent. See *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982).

On this record, it would be improper to find error. We recognize that the defendant's argument has much to commend it; see *Miller* v. *State,* 436 N.E.2d 1113, 1120–21 (Ind. 1982); *State* v. *Houghton,* 272 N.W.2d 788, 790–93 (S.D. 1978); *State* v. *Coe,* 101 Wash. 2d 772, 776–81, 684 P.2d 668 (1984); *State* v. *Alsteen,* 108 Wis. 2d 723, 729–30, 324 N.W.2d 426 (1982); Slough & Knightly, "Other Vices, Other Crimes," 41 Iowa L. Rev. 325, 333–34 (1956); note, "Prior Sexual Offenses Against a Person Other Than the Prosecutrix," 46 Tul. L. Rev. 336, 337–38 (1971); especially in light of the recent enactment of General Statutes § 54-86f. See *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 225, 455 A.2d 857 (1983). We therefore agree that sex crime defendants, like sex crime victims, should be shielded from unnecessarily prejudicial evidence of their prior sexual conduct. Appellate review of evidentiary rulings of the trial court is, however, limited to the specific legal issue raised by the objection of trial counsel. Practice Book §§ 3063, 288;[7]

---

[7] "[Practice Book] Sec. 3063. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

"[Practice Book] Sec. 288. OBJECTIONS TO EVIDENCE

"Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection

*State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). The purpose of requiring trial counsel to object properly is not merely formal but serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial. See *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984). In the absence of an objection in the trial court on the grounds of prejudice, we find no error in the admission of the challenged evidence.[8]

## III

The defendant in his third claim of error urges us to hold that the trial court should have granted his motion, pursuant to Practice Book §§ 902, 903,[9] to vacate the judgment and receive additional evidence or for a new

shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

[8] Even if the defendant had properly preserved for review his claim of prejudice regarding the one question to which objection was specifically taken, the admission without proper objection of similar evidence would have rendered any error harmless. See *State* v. *Boyd,* 178 Conn. 600, 604, 424 A.2d 279 (1979); *State* v. *Jeustiniano,* 172 Conn. 275, 283–84, 374 A.2d 209 (1977).

[9] "[Practice Book] Sec. 902. —— —— IN GENERAL

"Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him.

If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

"[Practice Book] Sec. 903. —— —— TIME FOR FILING

"Unless otherwise permitted by the judicial authority in the interests of justice, a motion for a new trial shall be made within five days after a verdict or finding of guilty or within any further time the judicial authority allows during the five-day period."

trial. The proffered evidence consisted of the follow-
ing: (1) the results of a polygraph examination of the
defendant; (2) a summary of the complainant's testi-
mony regarding the telephone number she had given
the defendant after the assault; (3) live testimony from
witnesses whose depositions had been received at the
trial; and (4) testimony about the defendant's good char-
acter.

The trial court denied the defendant's motion, prin-
cipally because it was untimely, but also because, in the
judgment of the trial court, the evidence in question
could have been made available at the trial and would
not have required reconsideration of the defendant's
guilt. Appellate review of the denial of a motion to
vacate a judgment or for a new trial is limited to a
determination of whether the trial court abused its dis-
cretion. See *State* v. *Asherman,* 193 Conn. 695, 735,
478 A.2d 227 (1984). Given the absence of such abuse,
there is no error.

## IV

The defendant's final contention is that his prosecu-
tion, conviction, and sentencing on both sexual assault
and unlawful restraint unconstitutionally placed him
in double jeopardy. The double jeopardy clause of the
fifth amendment to the United States constitution and
similar fundamental principles of Connecticut law[10] pro-
hibit the imposition of multiple punishments upon a
defendant who is tried on related charges that consti-
tute the same offense. See *Brown* v. *Ohio,* 432 U.S.
161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *North
Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072,

[10] We have repeatedly held that, although the Connecticut constitution
contains no express prohibition against double jeopardy, it is "a fundamental
principle of common law that no one shall be put in jeopardy more than
once for the same offense." *State* v. *Langley,* 156 Conn. 598, 600–601, 244
A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d
712 (1969); see *State* v. *Johns,* 184 Conn. 369, 373 n.6, 439 A.2d 1049 (1981).

23 L. Ed. 2d 656 (1969). "[O]ffenses are the same within the meaning of the double jeopardy clause 'where the same act or transaction constitutes a violation of two distinct statutory provisions [unless] each provision requires proof of a fact which the other does not.' *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State* v. *Devino,* 195 Conn. 70, 74–75, 485 A.2d 1302 (1985).

The defendant was charged in the information and the bill of particulars with sexual assault in the first degree as defined by General Statutes § 53a-70 and with unlawful restraint in the first degree as defined by General Statutes § 53a-95.[11] Examination reveals that each of these crimes requires proof of a fact not required for conviction of the other. For a conviction of first degree sexual assault, the state must prove compelled sexual intercourse, which is not a necessary element of the crime of first degree unlawful restraint. For a conviction of first degree unlawful restraint, the state must prove exposure of the victim to a substantial risk of physical injury, which is not a necessary element of the crime of first degree sexual assault, since the latter crime can be committed by threatening the safety of a third person. In the absence of multiple punishments for the same offense, the defendant cannot prevail on his claim of double jeopardy.

There is no error.

In this opinion the other judges concurred.

---

[11] See footnotes 1 and 2, supra, for the text of the relevant statutes.