[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT"S MOTIONS #174 AND #175
Defendant's motion #175 will be treated first because the answer is shorter. Motion #175 is entitled "Motion For Stay of Execution Re. Visitation." Defendant requests the stay claiming "it would be in the interests of justice to stay execution of the visitation orders since those orders are the principal focus of the plaintiff's appeal." In view of the position the undersigned is taking which will be set forth in greeter detail in dealing with Motion #174, the request for a stay of execution in Motion #175 is denied.
 II
Defendant's Motion #174 is entitled "Motion To Open, Reargue and Modify Judgment." A hearing was held on the motion on April 17, 1991. The motion specifically raises three points with respect to which relief is sought. They are as follows: 1. "those aspects of the judgment which grant visitation rights to third parties who are strangers to this action"; and 2. "that aspect of the visitation schedule which prohibits the defendant from having a free weekend with the minor child subsequent to the onset of the overnight weekend visits"; and 3. "the defendant also CT Page 4378 seeks orders which would obligate the plaintiff to spend his visitation time with the minor child." The defendant, in addition to the oral argument before the Court, submitted a lengthy written brief in support of the issues raised in the two motions. Thereafter a written "Addendum" was submitted so that the court might consider the recent case, Trella v. Trella, 24 Conn. App. 219
(1991).
 A
The third point referred to above will be dealt with first because the subject matter requires less discussion than the first two. This matter was carefully considered when the original memorandum was written, in spite of any feelings to the contrary expressed or not. The authorities cited in the defendant's memorandum appear not to be pertinent. The defendant's statement of position may be somewhat ambiguous. She may be asking that the plaintiff spend all of his time of visitation with the child. The defendant, as I have previously set forth on my memorandum, admitted that she would leave the child with her parents. She was also contemplating getting part time work which would again mean abandoning the child to some other person, parent or other. This is decidedly an unfair advantage to the defendant. The fact that she is residing in the home of her parents does not alter the situation of unequal treatment as between the parties.
Therefore, no such change in the visitation orders is warranted and none is made on account of this request.
 B
Closely related to point number 3 is point number 1 which will be dealt with now. The grievance of this complaint, as I read it, is that the defendant interprets the court's memorandum of decision as granting visitation to third parties who were not parties to the instant action, nor actively participated in the trial as witnesses. This is in reference to the plaintiff's parents and a sister. It is true that none of them were parties by original designation nor by subsequent intervention voluntarily or involuntarily.
As the defendant sets forth in her brief on page 2: "1. The defendant seeks reopening and modification of paragraph 4(h) of the judgment . . ." The defendant correctly sets forth the provisions of said subparagraph which need not be repeated here in its entirety.
In support of her interpretation of the subparagraph and her position in that respect, the defendant cites three cases. It is the position of the undersigned that all three are not pertinent CT Page 4379 nor helpful to the instant case.
First, nowhere in my memorandum of decision is custody of the child granted to any stranger to this action by way of being in accord with the order of the trial court in Cappetta v. Cappetta, 196 Conn. 10 (1985). In that case, as stated by the Supreme Court, ". . .the court awarded custody outright to the paternal grandmother." Id. p. 12.
The defendant also offers the case of Strohmeyer v. Strohmeyer, 183 Conn. 353 (1981). As stated by the Supreme Court in the opening sentence of its Opinion, "The principal issue on this appeal is the propriety of action taken by a trial court, on its own motion, to grant joint custody of a minor child to both of the child's parents." In that case there is much in the recitals of the facts and of the actions of the parties as well as the references to the expressions of the trial court that distinguishes it from the instant case.
Finally the defendant offers for consideration Connolly v. Connolly, 191 Conn. 468 (1983) which, while dealing with a totally alien point, does raise a point which I consider well taken. The Connolly case resulted in a reversal decision where the trial court entered an order terminating periodic alimony under the provisions of the cohabitation statute, 46b-86 (b) on its own initiative. This particular statute or its provisions had not been specifically pleaded originally nor by subsequent motion. Using the Connolly case the defendant argues that the court in the instant case could not grant visitation rights to the plaintiff's parents and sister without an invocation by the plaintiff of 46b-59
entitled "Court may grant right of visitation to any person."
The defendant correctly notes in her brief that my memorandum of decision does not specifically refer to 46b-59. There is no order in the said memorandum that awards specific rights of visitation with the minor child to any person other than the plaintiff. There is no specific order in the memorandum that awards any rights of visitation to the defendant's parents or other members of her family. If one were to constrain her as she seeks to do to the plaintiff, then she should not go out of her present living quarters at any time leaving the child behind with her parents or anyone else. In the course of the trial the plaintiff did not request this prohibition against the defendant. He sought equal treatment for his parents and sister. In each party's situation this was granted by the court.
The defendant refers in her brief (page 5) to a transcript of a hearing before Freedman, J. and quotes a portion of his "admonition" to the plaintiff as follows: "must devote his full and undivided attention to the child." The quote is incomplete CT Page 4380 and is now set forth to understand the order of the court in this regard. The full paragraph taken from the transcript of March 2, 1988 is as follows:
 "Mr. Vincent, I would caution you, that if you do have the child with you that you are going to have to devote your full and undivided attention to the child. And help that you have from your family probably would be welcome by you and by the child." (underscoring supplied).
I considered this transcript carefully and did not read in it any prohibition against the leaving the child with her paternal grandparents or aunt while he might for any number of reasons have other matters to attend to, routine or emergency, that would take him outside the physical presence of his daughter. I believed then and do now also that my orders in subparagraph 4(h) were in harmony with Judge Freedman's expressions and more restrictive. Knowing full well from her testimony at the trial, the very real enmity that the defendant had for her then sister-in-law, narrowed the conditions that would be allowed when the plaintiff was not present with his daughter or unable to return her to her mother.
The defendant also refers to a transcript "of proceedings on July 2, 1989, specifically requires the plaintiff to be present during visits." There is in the official file a transcript of proceedings before Fuller, J. dated July 12, 1989. This too was considered by the undersigned in preparing my original memorandum. Again I would note that the parties were in agreement. There is a statement made by Attorney Curry (child's court appointed attorney) that Mr. Vincent had just agreed to be present for visitation and would pick up and drop off the child.
However, what has not been referred to by the defendant in this transcript is the colloquy between Judge Fuller and Attorney Chiarelli wherein Attorney Chiarelli points out that the plaintiff was really seeking overnight visitation and was awaiting further action relative to a psychiatric evaluation. Mr. Chiarelli concluded with a statement that their agreement was a "temporary arrangement." Judge Fuller concluded the discussion with these words: "Okay, it'll be, it will be just a temporary arrangement, and without prejudice to anyone to renew the question of visitation."
I do not consider the defendant's references in her brief to the taking of an appeal as a veiled threat. By the same token it was and still is my belief that every precaution was taken to avoid an appeal on the issues of custody and visitation. I tried then and now to articulate as fully as possible my position. CT Page 4381
The only rights of visitation are those set forth in the orders and they are to the plaintiff alone. The reference to the plaintiff's parents and sister was to eliminate any further motions as to whether they would be excluded from the presence of the grandaughter and niece. They are placed in the same position as the defendant's family. No reference was made to the defendant's family because the plaintiff has never made a complaint against them.
If the plaintiff spends so little time with his daughter, as to amount to an abandonment of her during his periods of visitation, such may be made the subject of a true motion to modify.
Now as to point three in this series which related to week- end visitation. There is no need to change the order. The defendant will always have a free day of those non-overnight week- ends. She will always have the child for the week days preceding and succeeding her day of the week-end. She will also have so much more time with the child over-all that there is equitably no need for her to complain.
The request for modification is denied.
 III
On page 11 of her brief the defendant sets forth a request that the sum of $10,000.00 awarded to her be classified as lump sum alimony. This was not set out in her original claims for relief. In paragraph 8 of her proposed orders filed with the Clerk on May 17, 1990 she sought the transfer of the plaintiff's interest in the condominium in Meriden, Connecticut. Instead the court ordered the defendant to convey her interest to the plaintiff under the provisions of 46b-81. The defendant was awarded the sum of $10,000.00 to be evidenced by the plaintiff's non-interest bearing promissory note.
The defendant seeks the classification of lump sum alimony to insulate her claim in the event that the plaintiff files personal bankruptcy. At the time I entered judgment I was not contemplating the award as being lump sum alimony. As stated in the original memorandum of decision the condominium at the time of trial appeared to be in trouble because of the debt to the credit union and pending foreclosure proceedings. It was my belief that the plaintiff was in the better position to salvage the condominium, if it could be saved, and further that he had made the greater contributions to its acquisition and improvement and maintenance thereafter. I also did not want to deprive the defendant entirely of any share in this property division. Thus CT Page 4382 she was given $10,000.00 payable in two equal payments, five and ten years after the dissolution judgment. This was to allow the plaintiff a reasonable amount of time to work out his difficulties to then be able to meet the two payments.
Defendant cites the case of Lesser v. Lesser, 16 Conn. App. 513
(1988). The rule in the case in substance is that alimony, maintenance and support provisions of a spouse in a dissolution decree are not dischargeable in the bankruptcy proceedings of the other spouse. "In contrast, obligations assumed as part of property settlements are discharged." Id. p. 516. The Appellate Court's Opinion sets forth a list of factors to examine to determine whether the order that is questioned is either alimony or a property settlement. Those factors in the instant case do not lead to a conclusion that my award of $10,000.00 should be regarded as lump sum alimony.
The order for alimony in lieu of the continuing duty to support is specifically set forth as periodic alimony and is specifically limited as to term (non-modifiable in this respect) and also provides for termination among other reasons when the defendant's earnings exceed $12,000.00 annually. There was no thought that the defendant was entitled to any more support when all the circumstances testified to and all pertinent statutory factors were considered.
The $10,000.00 award to the defendant was intended to be a property settlement under 46b-81. See Ridgeway v. Ridgeway,180 Conn. 533, 543, 544 (1980); Dubicki v. Dubicki, 186 Conn. 709, 715
(1982).
Defendant's request to amend the judgment is denied.
The final claim is that the court violated the pendent lite order regarding the plaintiff's obligation to pay the liabilities set forth on his financial affidavit filed with the court at the time. The defendant's Addendum deals further with this matter and submits the case of Trella v. Trella, 24 Conn. App. 219 (1991). I have examined this case.
The matter referred to by the defendant is specifically treated in the original memorandum of decision. The financial affidavit filed at the time did not include all the obligations. There does not appear to be a violation of any pendente lite order.
Therefore the defendant's request to re-open the judgment and modify or amend it in this regard is denied.
John Ottaviano, Jr. CT Page 4383 State Trial Referee